**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**PRESTON RUSSELL**                                    **CIVIL ACTION**

**VERSUS**                                             **NO. 05-6047**

**N. BURL CAIN (WARDEN)**                              **SECTION "R"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

## I.    Factual Background

The petitioner, Preston Russell ("Russell"), is an inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On March 22, 1999, Russell was charged by Bill of Information

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

in Orleans Parish with the simple burglary of Fat Harry's Bar and Grill on St. Charles Avenue in New Orleans, Louisiana.[3]

The record shows that, according to John Elms, the Elm Amusement Company had placed a jukebox, three video poker machines, two pool tables, and three pinball machines in Fat Harry's Bar.[4] On October 2, 1995, when the owner of the bar, Carl Huling, arrived, he found that the rear door had been pried open and the alarms on the machines were sounding. The cash boxes on the machines had been broken open. Sergeant Cornell Day lifted fingerprints from the metal cash box on the jukebox. Officer Glen Burmaster determined that the fingerprints belonged to Russell.

Russell was tried before a judge on April 27, 1999, and found guilty as charged.[5] On June 4, 1999, the Trial Court found Russell to be a fourth offender and sentenced him to serve the mandatory life sentence.[6] The Trial Court also denied Russell's Motion to Quash Multiple Offender Bill of Information and the Motion to Reconsider Sentence.[7]

On appeal to the Louisiana Fourth Circuit Court of Appeal, Russell's counsel raised four grounds for relief: (1) the Trial Court erred in denying the Motion to Quash the Bill of Information; (2) the Trial Court failed to find that the waiver of jury trial was knowing and voluntary; (3) the evidence was insufficient to support the conviction; and (4) the evidence was insufficient at the

---

[3]St. Rec. Vol. 1 of 2, Bill of Information, 3/22/99.

[4]The facts were taken from the opinion on direct appeal issued by the Louisiana Fourth Circuit Court of Appeal. St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 99-KA-2733, 12/27/00; *State v. Russell*, 778 So.2d 111 (La. App. 4th Cir. 2000) (Table).

[5]St. Rec. Vol. 1 of 2, Trial Minutes, 4/27/99; Trial Transcript, 4/27/99; Verdict, 4/27/99. Russell waived the right to trial by jury. St. Rec. Vol. 1 of 2, Transcript of Waiver of Jury Trial, 4/27/99.

[6]St. Rec. Vol. 1 of 2, Multiple Bill Hearing Minutes, 6/4/99; Multiple Bill (2 pages), 6/10/99; Transcript of Multiple Bill Hearing, 6/4/99.

[7]*Id*.; St. Rec. Vol. 1 of 2, Motion to Quash Multiple Offender Bill of Information, 6/10/99; Motion to Reconsider Sentence, 6/10/99.

multiple bill hearing to establish waiver of rights in two of the prior convictions.[8]  Russell filed a *pro se* supplemental memorandum raising the additional claim that he was not adequately advised of his right to trial by jury.[9]

The Louisiana Fourth Circuit rejected the arguments as meritless and affirmed the conviction and sentence.[10]  The Court also refused rehearing on February 28, 2001.[11]

Russell's subsequent and timely[12] *pro se* writ application to the Louisiana Supreme Court was denied without reasons on March 7, 2002.[13]  His conviction became final 90 days later, on June 5, 2002, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

## II.   Procedural Background

While his direct appeal was pending, on September 8, 2001, Russell submitted a *pro se* Motion to Correct Illegal Sentence alleging that the Trial Court sentenced him under the wrong

---

[8]St. Rec. Vol. 1 of 2, 4th Cir. Opinion, 99-KA-2733, 12/27/00; St. Rec. Vol. 1 of 2, Appeal Brief, 99-KA-2733, 3/1/00.

[9]*Id.*; St. Rec. Vol. 1 of 2, Supplemental Memorandum, 99-KA-2733, 1/9/01.

[10]*Id.*

[11]St. Rec. Vol. 1 of 2, Application for Rehearing, 99-KA-2733, 1/9/01; 4th Cir. Opinion, 99-KA-2733, p. 10, 12/27/00.

[12]Pursuant to La. Code Crim. P. art. 922(B) and (C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the appellate court's opinion, or the denial of rehearing, to file a writ application in the Louisiana Supreme Court.  His writ application had a postmark date of March 30, 2001, which was within that period.  *See* St. Rec. Vol. 1 of 2, La. S. Ct. Letter, 2001-KO-1052, 4/12/01 (postmark 3/30/01); *Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006).

[13]*State v. Russell*, 810 So.2d 1149 (La. 2002); St. Rec. Vol. 1 of 2, La. S. Ct. Order, 2001-KO-1052, 3/7/02.

provision of the Louisiana Habitual Offender Statute.[14]  The certified mail receipt indicates that it was received by the clerk of the Orleans Parish Criminal District Court on September 12, 2001.  The record does not contain a file stamped copy of the motion.  The record also does not contain a ruling by the Trial Court on this motion.

On October 24, 2002, Russell submitted an Application for Post Conviction Relief raising three grounds for relief:[15] (1) ineffective assistance of appellate counsel for failure to raise and brief the issue of excessive sentence; (2) ineffective assistance of counsel for failure to have counsel from a predicate case testify regarding her role in the guilty plea; and (3) ineffective assistance of counsel for failure to challenge the use of the guilty plea in Case No. 288-716 as a predicate offense at the multiple bill hearing where, in the prior case, he was incorrectly informed about the sentencing range.  The Trial Court denied the Application without reasons on February 21, 2003.[16]

Russell filed a timely writ application with the Louisiana Fourth Circuit seeking review of the Trial Court's ruling on the three post-conviction claims.[17]  The Court denied the Application finding no error in the Trial Court's denial of relief.[18]  The Louisiana Supreme Court also denied Russell's subsequent and timely Writ Application without reasons.[19]

---

[14]St. Rec. Vol. 2 of 2, Motion to Correct Illegal Sentence, signed 9/8/01; *see*, Mail Receipts, 9/10/01 (showing receipt by clerk on 9/12/01).

[15]The Trial Court record does not contain a copy of this Application.  A copy is however attached to Russell's appellate writ application.  St. Rec. Vol. 2 of 2, Application for Post Conviction Relief, signed 10/24/02; *see*, Mail Receipts, 10/24/02.

[16]St. Rec. Vol. 2 of 2, Judgment, 2/21/03.

[17]St. Rec. Vol. 2 of 2, 4th Cir. Writ Application, 2003-K-0594, 3/26/03.

[18]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2003-K-0594, 4/30/03.

[19]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 03-KH-1500, 5/29/03 (postmarked 5/12/03); *State ex rel. Russell*, 870 So.2d 295 (La. 2004); La. S. Ct. Order, 2003-KH-1500, 4/23/04.

Thereafter, on June 22, 2004, Russell filed a Writ Application with the Louisiana Fourth Circuit seeking a ruling on his Motion to Correct Illegal Sentence submitted to the Trial Court on September 8, 2001.[20] The Louisiana Fourth Circuit denied the Application on July 21, 2004, stating that Russell failed to demonstrate that he was entitled to the relief sought.[21]

Russell timely filed for review in the Louisiana Supreme Court.[22] The Court denied the Application citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[23] The Court also denied Russell's Request for Reconsideration without reasons.[24]

## III. Federal Petition

On November 15, 2005, Russell filed a petition for federal habeas corpus relief in which he alleges seven grounds for relief:[25] (1) ineffective assistance of appellate counsel for failure to raise and brief the issue of excessive sentence; (2) ineffective assistance of counsel for failure to request that his counsel from a predicate case be called to testify regarding her role in the guilty plea; (3) ineffective assistance of counsel for failure to challenge the use of the guilty plea in Case No. 288-716 as a predicate offense at the multiple bill hearing where, in that prior case, he was incorrectly informed about the sentencing range; and (4) the Trial Court erred by sentencing him pursuant to the wrong portion of the Louisiana Habitual Offender Statute.

---

[20]St. Rec. Vol. 2 of 2, 4th Cir. Writ Application, 2004-K-1047, 6/22/04.

[21]St. Rec. Vol. 2 of 2, 4th Cir. Order, 2004-K-1047, 7/21/04.

[22]St. Rec. Vol. 2 of 2, La. S. Ct. Writ Application, 04-KH-2264, 9/7/04 (postmarked 8/17/04).

[23]*State ex rel. Russell v. State*, 903 So.2d 448 (La. 2005); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2004-KH-2264, 6/3/05.

[24]St. Rec. Vol. 2 of 2, La. S. Ct. Request for Reconsideration, 04-KH-2264, 8/4/05 (postmarked 6/14/05); *State ex rel. Russell v. State*, 916 So.2d 151 (La. 2005); St. Rec. Vol. 2 of 2, La. S. Ct. Order, 2004-KH-2264, 11/29/05.

[25]Rec. Doc. No. 1.

The State filed an opposition response arguing that Russell's petition is untimely filed.[26] Alternatively, the State argues that Russell's first three claims are without merit and his fourth claim is not proper for federal review. Russell responded to the State's opposition urging the Court to find his petition to be timely filed.

## IV.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to Russell's petition, which is deemed filed in this court under the federal "mailbox rule" on August 15, 2005.[28] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State has alleged that Russell's petition is not timely filed and that one claim is not procedurally proper for federal review. The Court finds that the State's limitation defense is meritless and must be rejected for the following reasons.

---

[26]Rec. Doc. No. 8.

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Russell's federal habeas petition on November 15, 2005, when the filing fee was paid. Russell dated his signature on the petition on August 15, 2005. This is the earliest date on which he could have delivered it to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the mailbox rule to his pro se petition. *Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

**V.**     **Statute of Limitations**

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[29]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  As set forth above, Russell's conviction became final on June 5, 2002, which was 90 days after the Louisiana Supreme Court denied the Application following his direct appeal.  Under the plain language of § 2244, he had until June 5, 2003, to file a timely federal application for habeas corpus relief and he failed to do so.  Thus, literal application of the statute would bar Russell's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v.*

---

[29]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here: (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

> A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
>
> C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
> D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

*Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The federal courts have also determined that requests for transcripts and copies of documents from the record, like those occasionally filed by petitioner, are not "applications for post-conviction or other collateral review" and therefore do not affect the timeliness calculations. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcripts is not "other collateral review" for tolling purposes); *see also Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, 2002 WL 63541 (E.D. La. Jan. 16, 2002); *Jones v. Johnson*, 2001 WL 1006062 at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript, not required to file an application, does not warrant equitable tolling).

In this case, the State alleges that Russell is not entitled to tolling for the period during which his Motion to Correct Illegal Sentence because he waited too long to pursue a ruling on that motion and it fell stale.  By its exclusion in the opposition, the State apparently would not toll the time during which the supervisory review regarding that motion was pending in the Louisiana Fourth Circuit or the Louisiana Supreme Court.

The State cites absolutely no law, state or federal, to support its suggestion that Russell's Motion to Correct Illegal Sentence became stale or that his delay in pursuing a ruling was prejudicial to the State.  The State would argue that it is prejudiced by Russell's delay but does not recognize the inordinate delay endured by Russell via the Trial Court's unexplained failure to rule.  It is the prejudice to Russell which the tolling doctrine seeks to correct.  In addition, the State has not been prejudiced in its ability to respond the merits of the issues raised in that motion, that he was

prosecuted under the incorrect portion of the multiple offender statute, which now form Russell's fourth claim before this Court.

The State also suggests that the Motion to Correct Illegal Sentence and the related Writ Applications were not "state post conviction or other collateral review" which would entitle Russell to tolling. Again, the State cites no case law to support this conclusion. Russell's motion challenged the constitutionality and legality of his adjudication as a fourth offender. It was therefore related to his conviction and sentence. The federal courts have recognized that motions to correct illegal sentences or to reconsider sentences of this sort are "other collateral review" under § 2244(d)(2) for purposes of tolling. *Lamison v. Cain*, 2001 WL 1301435 (E.D. La. Oct. 15, 2001) (Duplantier, J.) (motion to correct illegal sentence); *Trujillo v. Neet*, 66 Fed. Appx. 150, 2003 WL 1889952 (10th Cir. Apr. 17, 2003) (motion for sentence reconsideration); *Martin v. Embry*, 202 F.3d 282 (10th Cir. 1999) (Table, Text in Westlaw) (sentence reconsideration motion).

Therefore, considering the period during which the Motion to Correct Illegal Sentence and the two related Writ Applications were pending, along with the pendency of the other timely filed state post conviction proceedings outlined above, Russell has not exceeded the one-year AEDPA filing period. For the foregoing reasons, the State's limitations defense is rejected.

**VI.   <u>Procedural Default</u>**

In his Motion to Correct Illegal Sentence, Russell alleged that he was prosecuted as a habitual offender under the wrong section of Louisiana's Habitual Offender Statute. As outlined above, the only reasoned decision addressing the issue from the Louisiana Supreme Court, which denied Russell's 2004 Writ Application related to his Motion to Correct Illegal Sentence on procedural grounds, citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*.

Under La. Code Crim. P. art. 930.3, post-conviction relief will not be granted unless the petitioner establishes that: (1) the conviction was obtained in violation of the state or federal constitution; (2) the court exceeded its jurisdiction; (3) the conviction or sentence subjected him to double jeopardy; (4) the limitations on the institution of the prosecution had expired; (5) the statute creating the offense for which he was convicted and sentenced is unconstitutional; (6) the conviction or sentence constitute the ex post facto application of law in violation of the federal or state constitution; (7) the results of DNA testing performed proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.  In *State ex rel. Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

The State now argues that Russell's fourth claim, raising the same argument raised in the motion to the Court, is a matter of state procedural law and not proper for federal habeas corpus review.  To the extent the State meant this as a suggestion that the claim is procedurally barred from federal review, the Court will address the defense.[30]

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260,

---

[30]In light of the state court's ruling, the Court would also be able to raise procedural default *sua sponte* with notice to the petitioner and an opportunity to respond, both of which are provided by this report and recommendation. *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998).

262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

In this case, the state courts barred review of Russell's claim because it was not a claim appropriately brought on for post conviction review under La. Code Crim. P. 930.3 and *State ex rel. Meline*.  This Court must consider whether the bar prohibits consideration of the claim on federal habeas corpus review.  For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.

## A.    <u>Independent State Ground</u>

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  *Amos*, 61 F.3d at 338.  In this case, the Trial Court relied exclusively on a rule of Louisiana procedural default, independent of federal law, in reaching its decision to dismiss petitioner's claims.  The ruling was therefore based on an independent state ground.  *See e.g.*, *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (Art. 930.3); *Ardis v. Cain*, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (Art. 930.3).

### B.   <u>Adequate State Ground</u>

The question of the adequacy of a state procedural bar is itself a federal question.  *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339).  A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.  *Id*.  This federal habeas court must therefore evaluate the adequacy of each of the rules applied to bar petitioner's claims.

A federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair.  *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).  In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).  For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar.  *Davis v. Johnson*, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under

the circumstances of the case); *Poree v. Cain*, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). However, where such a basis exists in state law, the bar must stand.

Because Russell's collateral claims raised issues regarding the validity of his multiple offender adjudication and sentence, the state court relied upon La. Code Crim. P. art. 930.3 and related case law to bar review of the sentencing issue. The federal courts have repeatedly held that *State ex rel. Melinie* and La. Code Crim. P. art. 930.3 are adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus proceeding. *See, e.g., Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016 (5th Cir. Sept. 28, 2000) (Table, Text in Westlaw); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086 (E.D. La. June 30, 2005) (Berrigan, C.J.) (Art. 930.3 and *State ex rel. Melinie* are independent and adequate); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (same); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same). The Court therefore finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* is adequate to bar review of the merits of Russell's fourth claim by this federal habeas corpus court.

Russell will be excepted from the procedural bars in spite of his default only if he can show cause for his default <u>and</u> prejudice attributed thereto. Alternatively, he could demonstrate that the federal court's failure to review the claim will result in a fundamental miscarriage of justice. *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

C.    **Cause and Prejudice**

To establish a cause for his procedural default, Russell must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Even under a broad reading, he has not demonstrated in his pleadings the existence of any objective factor external to the defense that impeded his ability to raise these claims in a procedurally proper manner.

Furthermore, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray*, 477 U.S. at 486; *see also*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (a petitioner must first prove that counsel's actions were constitutionally deficient before such a claim can stand as cause for a procedural default).  Russell has not suggested that his counsel was remiss in failing to raise this particular issue on appeal.  The Court also notes that if Russell intends to rely on the alleged ineffective assistance of appellate counsel as cause, he must first independently exhaust the claim, which he has not done.  *Edwards*, 529 U.S. at 451.  Russell, therefore, has not shown cause for the failure to properly raise these claims in state court.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)).  Thus, having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and Russell has not alleged any actual prejudice.  *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).  Russell's claim alleging that he was prosecuted under the wrong section of the habitual offender laws is therefore procedurally barred

from review by this court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[31]

### D.   Fundamental Miscarriage of Justice

Russell's only remaining means of escaping this bar is if he can establish that a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish this, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt."  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Russell has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence of the crimes charged.  *Murray*, 477 U.S. at 496.  When the petitioner has not factually established his actual innocence, his

---

[31]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte.  *Id.*  In the instant case, the State has affirmatively raised the procedural default defense.

procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Russell has not met any exception to the procedural bar, his procedurally defaulted claim must be dismissed with prejudice without review of the merits. The Court will proceed with review of Russell's remaining three claims.

**VII.**   <u>**Standards of Review on the Merits**</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law. A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently

than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

18

## VIII.   Ineffective Assistance of Counsel (Claim Nos. 1, 2, and 3)

Russell has raised three instances of alleged ineffective assistance of counsel.  First, he alleges that his appellate counsel failed to urge on appeal the issue of excessive sentence.  Next, he alleges that his trial counsel erred in failing to call his counsel from one of the predicate offenses to testify at the multiple bill hearing regarding her limited role.  Third, Russell alleges that his trial counsel erred in failing to challenge the use of Case No. 288-716 as a predicate offense because he was not properly informed of the sentencing range before entering the plea of guilty in that case.

Russell raised these claims in his application for post conviction relief.  None of the state courts entered reasons for denial of relief on these claims.

### A.   The *Strickland* Standard

The standard for evaluating counsel's performance is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's

performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir.

1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state court's failure to grant relief was contrary to, or an unreasonable application of, *Strickland*.

### B.    Appellate Counsel's Failure to Raise Excessive Sentence

Russell complains that his appellate counsel should have challenged the excessiveness of his sentence on direct appeal. The multiple bill filed in Russell's case charged him with being a fourth offender, having had three prior felony convictions. After the multiple bill hearing held on June 4, 1999, the Trial Court sentenced Russell to the mandatory life sentence pursuant to La. Rev. Stat. Ann. § 15:529.1. Russell's counsel filed a motion to quash the multiple bill on the basis that the State lacked sufficient proof to support it. Counsel also filed a Motion to Reconsider Sentence based on the excessiveness of the life sentence. The Trial Court denied both motions without reasons at the conclusion of the hearing and noted the objection to the excessiveness of the sentence. In order

to determine whether counsel erred in failing to appeal the excessiveness of the sentence, the Court must first determine whether such a claim was viable.

Federal courts accord broad discretion to a state trial court's sentencing decision which falls within the statutory limits. *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence). If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983).

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). When a habeas petitioner has been sentenced under a habitual offender statute, a federal court must consider "the seriousness of his most recent offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F. 2d at 316.

Russell was convicted of simple burglary. Under Louisiana law, the crime carried with it a sentencing range of a fine not more than $2000, imprisonment of not more than twelve years, or both. La. Rev. Stat. Ann. § 14:62. The state trial court also determined that Russell was a fourth offender. At the time of Russell's conviction, La. Rev. Stat. Ann. § 15:529.1 provided in relevant part the following sentencing scheme relative to a fourth felony offender like Russell:

> A.(1)Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the

commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:

. . .

(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life;
(ii) If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substance Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than 12 years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

Russell was charged in Case No. 325-382 with possession of cocaine.  This was a violation of the Louisiana's Uniform Controlled Dangerous Substances Law at La. Rev. Stat. Ann. § 40:967 and punishable for not more than five years.  His prior conviction for simple burglary of an inhabited dwelling in Case No. 288-716 carried a sentencing range of no less than one year, without benefit of parole, probation or suspension of sentence, nor more than 12 years.  La. Rev. Stat. Ann. § 14:62.2.

Reading the sentencing provisions together, as a habitual offender, Russell was facing a life sentence.  He had a prior drug crime punishable for five years and two simple robbery convictions punishable for no less than 12 years, which was sufficient to invoke the mandatory life sentence under Louisiana law.  *Accord*, *State v. Thomas*, 948 So.2d 1151, 1155 (La. App. 2d Cir. 2007); *State v. Green*, 880 So.2d 179 (La. App. 2d Cir. 2004).  This Court must now consider proportionality.

23

The United States Supreme Court has stated that "the Eighth Amendment does not require strict proportionality between crime and sentence. Instead, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 528 U.S. 11, 23 (2003) (*quoting Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)). The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality. *Id.*, 538 U.S. at 30. As noted above, that disproportionality is judged by whether similar sentences have been imposed for the same offense. *Smallwood*, 73 F.3d at 1346-47.

A review of the published case law in Louisiana reflects that Russell's life sentence as a fourth offender was not grossly disproportionate. *State v. Thomas*, 948 So.2d at 1151 (mandatory life after simple burglary of inhabited dwelling); *State v. Wilson*, 2006 WL 3107814 (La. App. 1st Cir. 2006) (mandatory life after simple burglary conviction); *State v. Lowery*, 890 So.2d 711 (La. App. 1st Cir. 2004) (mandatory life after simple burglary, with two prior simple burglary convictions and one possession of cocaine); *State v. Green*, 880 So.2d at 179 (mandatory life after simple burglary conviction, with two prior simple burglary convictions and one attempted simple burglary conviction); *State v. Warfield*, 859 So.2d 307 (La. App. 2d Cir. 2003) (mandatory life sentence after simple burglary conviction, with two prior simple burglary convictions, possession of cocaine conviction, third driving while intoxicated conviction); *State v. George*, 829 So.2d 440 (La. App. 4th Cir. 2002) (mandatory life sentence after simple burglary conviction); *State v. Bryant*, 775 So.2d 596 (La. App. 2d Cir. 2000) (mandatory life sentence after attempted simple burglary conviction, with two prior simple burglary convictions and forgery conviction); *State v. Windham*, 748 So.2d 1220 (La. App. 5th Cir. 1999) (mandatory life sentence after attempted simple burglary conviction, with prior convictions including simple burglary and armed robbery); *State v. Flanagan*, 744 So.2d

24

718 (La. App. 2d Cir. 1999) (mandatory life sentence after simple burglary conviction, with simple criminal damage to property, two distribution of cocaine convictions, possession of marijuana).

For the reasons discussed above, Russell's sentence is not unconstitutionally excessive under federal law.  Thus, counsel's failure to raise the claim in Russell's direct appeal was neither deficient nor prejudicial.  Counsel is not required to urge a claim that is not meritorious.  *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness), *cert. denied*, 525 U.S. 1174 (1999).

Therefore, the denial of relief on this issue was not contrary to, or an unreasonable application of, established Supreme Court precedent.  This claim is without merit.

## C.    Trial Counsel Failed to Present Prior Counsel's Testimony

Russell alleges that his trial counsel should have presented testimony from Sherry Watters, the attorney appointed to represent him in Case No. 303-758.  The conviction for possession of stolen goods in that case was used in the multiple offender proceeding.  Russell claims that Watters was only appointed at the plea hearing to sign the waiver forms.  He claims that she should have been called to testify that she was not his counsel and instead happened to be in the courtroom.  Russell suggests that his counsel could have used the denial of adequate counsel to challenge the use of the conviction at the multiple bill hearing.[32]

As a general rule, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a

---

[32]Russell also notes that the State failed to provide adequate proof of the waiver of his constitutional rights during that prior plea.  The Court finds that Russell has not challenged the sufficiency of the evidence at the multiple bill hearing in his petition to this Court or in any of his prior state pleadings.  Furthermore, the United States Supreme Court has held that federal habeas corpus relief is not available when a petitioner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody. *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 400-401 (2001).

witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  While the multiple bill hearing, not the trial, is at issue here, the same is true.

Instead, Russell suggests that Watters acted as stand-in counsel only.  He argues that she would have testified to this had she been called.  Russell has not provided an affidavit from Watters setting forth to what she would have testified.

In addition, the very form that Russell signed on November 26, 1984, indicates that his constitutional rights were explained to him, he understood the proceedings, and he "was fully satisfied with the handling of my case by my attorney and the way in which he has represented me."[33]  Furthermore, the documentation provided to the Trial Court at the multiple bill hearing reflects that Russell was still being represented by Watters at the sentencing in that case held over six months later, on June 5, 1985.[34]

Russell also points out that the docket sheet indicates that he was not represented by counsel on November 26, 1984.[35]  However, Watters's signature on the plea form is proof that she was in fact present and the docket sheet is in error.  Also, in seeming contradiction, Russell concedes that Watters was present with him at the plea hearing.

The record does not suggest on its face that Russell was denied counsel at the prior conviction so as to alert trial counsel to further question the plea at the multiple bill hearing.  There is nothing to indicate that, at the time of the multiple bill hearing, trial counsel knew or should have

---

[33]St. Rec. Vol. 1 of 2, Plea of Guilty, 303-758, 11/26/84.

[34]St. Rec. Vol. 1 of 2, Minute Entry, 303-758, 6/5/85.

[35]St. Rec. Vol. 1 of 2, Docket Sheet, 303-758.

known to question Russell's representation in the prior case.  Trial counsel will not be judged through the distortions of hindsight.  *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).

The record therefore does not support Russell's contention that his trial counsel performed deficiently in failing to call Watters to testify at the multiple bill hearing or to further challenge the use of the 1984 guilty plea as a predicate offense.

For the foregoing reasons, the state courts' denial of relief on this claim is not contrary to, or an unreasonable application of, *Strickland*.  Russell is not entitled to relief on this claim.

### D.      Trial Counsel Failed to Challenge the Use of Case No. 288-716

Russell argues that his Trial Court should have challenged the use of the conviction after his guilty plea in Case No. 288-716 as a predicate offense because he was not advised of the correct sentencing range before entering the plea in that case.[36]  He contends that he was told, prior to entering the plea of guilty, he would not be eligible for parole, probation or suspension of sentence, and could not receive a pardon.  Russell claims that this was erroneous information with regards to the sentencing range which calls the plea into doubt.

A review of the pleadings related to that case, which were submitted at Russell's multiple bill hearing, reflects that Russell was advised that, for the charge of simple burglary of an inhabited dwelling, he "could possibly receive a sentence of 1 to 12 years without benefit of parole, probation or suspension of sentence, for the first year."[37]  This tracks the sentence guideline found in La. Rev. Stat. Ann. § 14:62.2 as it appeared at the time of Russell's conviction:

---

[36]As noted above, Russell has not challenged the sufficiency of the evidence at the multiple bill hearing in his petition to this Court or in any of his prior state pleadings.  Federal habeas corpus relief is not available when a petitioner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody.  *Lackawanna*, 532 U.S. at 400-401.

[37]St. Rec. Vol. 1 of 2, Waiver of Constitutional Rights Plea of Guilty, 288-716, 6/22/82.

> Whoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years.

In fact, Russell was sentenced in that case to the minimum sentence of one year, without benefit of parole, probation, or suspension of sentence.[38]  Russell has not presented anything, nor do the records show, that he was informed about the availability of a pardon.  Even if he were so advised, he has shown no prejudice as a result of receiving the information because the sentencing was to be served without benefits for the first year.

Nevertheless, the record does not establish that Russell received the incorrect Information regarding the sentencing range in the predicate offense.  His counsel, therefore, was not deficient in failing to challenge the predicate offense on that basis during the multiple offender proceeding. *See Green*, 160 F.3d at 1037.

For the foregoing reasons, the state courts' denial of relief on this claim is not contrary to, or an unreasonable application of, *Strickland*.  Russell is not entitled to relief on this claim.

## IX.    **Recommendation**

It is therefore **RECOMMENDED** that Preston Russell's petition for issuance of Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[38]St. Rec. Vol. 1 of 2, Minute Entry, 288-716, 6/22/02.

a failure to object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____11th____ day of _____May_____, 2007.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**
